## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| EDWARD JEFF PRICE, | CIVIL ACTION 1:15-cv-07593 |
| Plaintiff, | |
| v. | COMPLAINT |
| OCWEN LOAN SERVICING, LLC., EXPERIAN INFORMATION SOLUTIONS, INC. and EQUIFAX INFORMATION SERVICES LLC. | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT

NOW COMES the Plaintiff, EDWARD JEFF PRICE by and through his attorneys, SULAIMAN LAW GROUP, LTD., complaining of the Defendants, OCWEN LOAN SERVICING, LLC., EXPERIAN INFORMATION SOLUTIONS, INC. and EQUIFAX INFORMATION SERVICES LLC as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking actual, statutory, and punitive damages, attorney's fees and costs for Defendants' violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. §1681, violations of the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. §1692, violations of the Telephone Consumer Protection Act ("TCPA") pursuant to 47 U.S.C. § 227, violations of the Bankruptcy Discharge Injunction pursuant to 11 U.S.C. §524, and violations of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") pursuant to 815 ILCS 505/1 et seq.

1

**JURISDICTION AND VENUE**

2.   Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3.   The Court has supplemental jurisdiction over the state law ICFA claim under 28 U.S.C. §1367.

4.   Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Plaintiff resides in this District and Defendants' conduct harmed Plaintiff in this District.

**PARTIES**

5.   Edward Jeff Price ("Plaintiff"), is a consumer and natural person over 18 years of age who at all times relevant owned and resided at the property located at 2240 Misty Creek Trail, Bolingbrook, Illinois 60490 ("subject property").

6.   Defendant Ocwen Loan Servicing, LLC ("Ocwen") is a Florida corporation with its principal place of business in Florida. Ocwen is a foreign company in the business of servicing loans and debt collection across the country, including the state of Illinois.

7.   Ocwen is a furnisher of information to the major credit reporting agencies, including Experian and Equifax.

8.   Defendant Experian Information Solutions, Inc. (hereinafter "Experian") is a corporation incorporated in the state of Ohio and is authorized to do business in the State of Illinois. Experian is in the business of compiling and maintaining files on consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity.

9.   Defendant Equifax Information Services, LLC (hereinafter "Equifax") is a Delaware limited liability company with its principal place of business in Atlanta, Georgia. Equifax is in the business of compiling and maintaining consumer files for the purpose of furnishing credit

information about consumers to third parties on a nationwide basis, including in the State of Illinois.

**BANKRUPTCY CASE**

10. On February 9, 2009, Plaintiff executed a mortgage in the amount of $282.369.00 ("subject loan") in favor of GMAC Mortgage ("GMAC") secured by the subject property.

11. On February 28, 2013, Plaintiff filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court, Northern District of Illinois, Case Number 13-07853 ("bankruptcy").

12. Schedule D of the bankruptcy petition listed the subject loan, a secured pre-petition debt to GMAC, in the amount of $282,369.00, secured by the subject property. *See* Exhibit A, a true and correct copy of Schedule D filed in Plaintiff's bankruptcy case.

13. On March 1, 2013, by virtue of listing GMAC as a creditor, the Bankruptcy Noticing Center ("BNC") served GMAC with notice of Plaintiff's bankruptcy filing and Plaintiff's Original Plan. *See* Exhibit B, a true and correct copy of the BNC Certificate of Notice establishing service of the notice of filing and Original Plan on GMAC.

14. On April 3, 2013, the 341 Meeting of Creditors was held with the Chapter 13 Trustee. No representative or attorney from GMAC appeared at the 341 Meeting of Creditors.

15. On May 24, 2013, the Plaintiff filed his modified Chapter 13 plan ("Modified Plan"). *See* Exhibit C, a true and correct copy of the Plaintiff's Modified Plan and BNC Certificate of Notice establishing service of the Modified Plan upon GMAC and Ocwen.

16. The Modified Plan proposed to treat Ocwen's claim as follows:

> "Debtor is surrendering the real property located at 2240 Misty Creek Trail, Bolingbrook, Illinois, to GMAC Mortgage and Ocwen Loan Servicing in full satisfaction of their claims." *Id.* at p. 5.

17. On May 24, 2013, the Modified Plan was confirmed by the Honorable Bruce W. Black. *See* Exhibit D, a true and correct copy of the Confirmation Order.

18. At some point after the Plaintiff's bankruptcy was filed, and while the subject loan was in default, GMAC sold or transferred the subject loan to Ocwen.

19. Plaintiff fully performed his duties as set forth in his confirmed Chapter 13 Plan.

20. On September 24, 2013, the Bankruptcy Court entered an Order of Discharge in Plaintiff's case of all dischargeable debts, including the subject loan. *See* Exhibit E, a true and correct copy of the Order of Discharge and BNC Certificate of Notice establishing service of the Order of Discharge upon Ocwen.

21. The Order of Discharge expressly states:

> "The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor...." *Id.* at p. 2.

22. On September 26, 2014, the BNC served Ocwen with the Order of Discharge. *Id.*

23. Pursuant to 11 U.S.C. §524, the Order of Discharge invoked the protections of the discharge injunction prohibiting any acts to collect upon the subject loan by Ocwen or any other party.

24. On November 15, 2014, Plaintiff's bankruptcy case closed.

25. Plaintiff's personal liability on the subject loan was extinguished via his bankruptcy discharge, thus terminating the business relationship with Ocwen and any of its successors and assigns.

## OCWEN'S POST-DISCHARGE COMMUNICATIONS

26. After the discharge injunction had taken effect, Ocwen initiated a campaign to collect the subject debt from Plaintiff personally.[1]

27. At all times relevant to this complaint, Plaintiff was the sole subscriber, owner, possessor, and operator of a cellular telephone with the assigned number ending in 1201. Plaintiff is, and has always been, financially responsible for this cellular phone and its services.

28. After Plaintiff's bankruptcy discharge, Ocwen began its barrage of dunning letters, unsolicited statements, and harassing phone calls to Plaintiff.

29. On July 16, 2014, Ocwen sent Plaintiff a dunning letter stating: "Amount Due: $26,661.39." The letter attached a payment coupon. *See* Exhibit F, a true and correct copy of Ocwen's July 16, 2014 dunning letter.

30. On August 18, 2014, Ocwen sent Plaintiff a dunning letter stating: "Amount Due: $28,617.13." The letter attached a payment coupon. *See* Exhibit G, a true and correct copy of Ocwen's August 18, 2014 dunning letter.

31. On October 18, 2014, Plaintiff received a dunning letter from Ocwen stating: "As of 10/17/2014, you are 534 days delinquent on your mortgage loan. Your account first became delinquent on 05/02/2013. Failure to bring your loan current may result in fees and foreclosure- the loss of your home... Total: $32204.22. You must pay this amount to bring your loan current. Please note that the Total Amount Due includes your next regular monthly payment." *See* Exhibit H, a true and correct copy of Ocwen's October  18, 2014 dunning letter.

---

[1] Pursuant to Plaintiff's Chapter 13 Plan, no payments were to be made to Ocwen as Plaintiff's Confirmed Plan surrenders the subject property to Ocwen in full satisfaction of its claims.

32. On November 18, 2014, Plaintiff received a dunning letter from Ocwen stating: "As of 11/18/2014, you are 566 days delinquent on your mortgage loan. Your account first became delinquent on 05/02/2013. Failure to bring your loan current may result in fees and foreclosure-the loss of your home... Total: $34077.55. You must pay this amount to bring your loan current. Please note that the Total Amount Due includes your next regular monthly payment." *See* Exhibit I, a true and correct copy of Ocwen's November 18, 2014 dunning letter.

33. Ocwen also attempted to collect the discharged debt through phone calls to Plaintiff. Between December 1 through December 28, 2014, Plaintiff received at least 27 calls to his cellular phone from Ocwen regarding the subject debt, requesting an immediate call back regarding the subject debt.

34. On December 12, 2014, Plaintiff received a phone call to his cellular phone from Ocwen regarding the subject debt. Plaintiff answered and asked Ocwen to stop contacting him because the subject debt had been discharged in his bankruptcy on September 24, 2013.

35. In January of 2015, Plaintiff received at least 15 phone calls to his cellular phone from Ocwen regarding the subject debt, requesting an immediate call back regarding the subject debt.

36. On January 16, 2015, Ocwen sent Plaintiff a dunning letter stating: "Amount Due: $323,237.20." The letter attached a payment coupon. *See* Exhibit J, a true and correct copy of Ocwen's January 16, 2015 dunning letter.

37. In February of 2015, Plaintiff received at least 13 phone calls on his cellular phone from Ocwen regarding the subject debt, requesting an immediate call back regarding the subject debt.

38. In March of 2015, Plaintiff received at least 51 phone calls on his cellular phone from Ocwen regarding the subject debt and requesting an immediate call back regarding the subject debt.

39. On March 16, 2015, Ocwen sent Plaintiff two dunning letters stating: "Amount Due: $327,620.31." The letters attached a payment coupon. *See* Group Exhibit K, true and correct copies of Ocwen's March 16, 2015 dunning letters.

40. On March 20, 2015, Plaintiff received a dunning letter from Ocwen stating: "As of 03/18/2015, you are 686 days delinquent on your mortgage loan. Your account first became delinquent on 05/02/2013. Failure to bring your loan current may result in fees and foreclosure-the loss of your home...Total: $43627.64. You must pay this amount to bring your loan current. Please note that the Total Amount Due includes your next regular monthly payment." *See* Exhibit L, a true and correct copy of Ocwen's March 20, 2015 dunning letter.

41. In April of 2015, Plaintiff received at least 46 more phone calls on his cellular phone from Ocwen regarding the subject debt and requesting an immediate call back regarding the subject debt.

42. On April 22, 2015, Plaintiff received a dunning letter from Ocwen stating: "As of 04/21/2015, you are 720 days delinquent on your mortgage loan. Your account first became delinquent on 05/02/2013. Failure to bring your loan current may result in fees and foreclosure-the loss of your home...Total: $46277.06. You must pay this amount to bring your loan current. Please note that the Total Amount Due includes your next regular monthly payment." *See* Exhibit M, a true and correct copy of Ocwen's April 22, 2015 dunning letter.

43. Ocwen's phone harassment campaign and illegal collection attempts were highly confusing and upsetting and have caused Plaintiff actual harm, including but not limited to, invasion of privacy, aggravation that accompanies unsolicited telephone calls, emotional distress, mental anguish from believing his bankruptcy had no legal effect, increased usage of his

telephone services, decreased battery life on his cellular phone, and diminished space for data storage on his cellular phone.

44. Moreover, Plaintiff was forced to expend time and expenses by retaining counsel as a result of Ocwen's conduct.

### CREDIT REPORTING AND PLAINTIFF'S CREDIT DISPUTES TO EXPERIAN

45. In early 2014, after receiving his discharge, Plaintiff pulled his Experian credit report.

46. Plaintiff's Experian report revealed that Ocwen was reporting the subject loan in default and with a high balance. The reporting was inaccurate as the subject loan was discharged in his bankruptcy and should be reporting a zero balance and without a negative history or derogatory status.

47. In early 2014, Plaintiff called Experian and disputed the reporting of the Ocwen account through Experian's phone dispute process.

48. Plaintiff's first phone dispute fell on deaf ears and the Ocwen account continued to report inaccurately, namely in default and with a high balance.

49. Shortly thereafter, Plaintiff submitted a second phone dispute to Experian in relation to the Ocwen account.

50. Plaintiff's second phone dispute was futile and the Ocwen account continued to report inaccurately, namely in default and with a high balance.

### a. Plaintiff's Dispute Letter to Experian

51. On November 19, 2014, after the subject debt to Ocwen was discharged, Plaintiff sent a written credit dispute letter to Experian, requesting that his credit file be updated to reflect the zero balance and discharged status of all accounts discharged in his Chapter 13 bankruptcy.

Plaintiff attached the relevant bankruptcy documents to his dispute. *See* Exhibit N, a true and correct copy of Plaintiff's dispute letter to Experian.

52. Among other things, Plaintiff's dispute letter to Experian stated the following:

    a. "I am enclosing a copy of the Order Discharging Debtor;"
    b. "Please update the subject credit file(s) to reflect the discharged status of the debts;"
    c. "Report a current balance of '0'" on all discharged accounts;
    d. "Consequently, I am requesting you to immediately activate the Automated Dispute Resolution System program with respect to this written notice;" and
    e. "I request that you forward this letter, and enclosures, to each of the creditors listed in my schedules." *Id.*

53. Plaintiff sent his dispute letter to Experian via certified mail, return-receipt requested. *Id.*

**b.    Experian's Response to Plaintiff's Dispute Letter**

54. On February 25, 2015, Experian responded to Plaintiff's dispute letter by correcting some of the accounts included in his Bankruptcy, but not the Ocwen account. *See* Exhibit O, a true and correct copy of Experian's February 25, 2015 response submitted by Experian to Plaintiff.

55. Experian responded to Plaintiff's dispute by stating that it had updated the trade line for the Ocwen account. *Id.* at p.2.

56. Notwithstanding its representation, the trade line for the Ocwen account was still reporting a "Balance Amount" of $279,828.00, a "Scheduled Payment Amount" of $1,613.00, and a "Past Due" amount of $54,223. *Id.* at p.6.

57. The reporting of the Ocwen trade line was inaccurate because Plaintiff was no longer liable on the subject loan. Reporting a "Balance Amount," a "Scheduled Payment Amount," and a "Past Due" amount inaccurately implies that the Plaintiff is delinquent and is still liable on the subject loan.

9

### CREDIT REPORTING AND PLAINTIFF'S CREDIT DISPUTES TO EQUIFAX

**a. Plaintiff's Dispute Letter to Equifax**

58. On November 19, 2014, after the subject debt to Ocwen was discharged, Plaintiff sent a written credit dispute letter to Equifax, requesting that his credit file be updated to reflect the zero balance and discharged status of all accounts discharged in his Chapter 13 bankruptcy. Plaintiff attached the relevant bankruptcy documents to his dispute. *See* Exhibit P, a true and correct copy of Plaintiff's dispute letter to Equifax.

59. Among other things, Plaintiff's dispute letter to Equifax stated the following:

a. "I am enclosing a copy of the Order Discharging Debtor;"
b. "Please update the subject credit file(s) to reflect the discharged status of the debts;"
c. "Report a current balance of '0'" on all discharged accounts;
d. "Consequently, I am requesting you to immediately activate the Automated Dispute Resolution System program with respect to this written notice;" and
e. "I request that you forward this letter, and enclosures, to each of the creditors listed in my schedules." *Id.*

60. Plaintiff sent his dispute letter to Equifax via certified mail, return-receipt requested. *Id.*

**b. Equifax's Failure to Correct Inaccurate Reporting**

61. On August 1, 2015, Plaintiff pulled his credit report from Equifax to find that Ocwen was still reporting a "Scheduled Payment Amount" of $1,613.00 and a "Current Status" of 120+ Days Past Due. *See* Exhibit Q, a true and correct copy of Plaintiff's Equifax credit report.[2]

62. The reporting of the Ocwen trade line was inaccurate as Plaintiff was no longer liable on the subject loan. Reporting a "Scheduled Payment Amount" and a "Past Due" status inaccurately implies that Plaintiff is delinquent and still liable on the subject loan.

---

[2] Trans Union removed all inaccurate and incomplete reporting in connection with the Ocwen account trade line.

63. As of today, the incorrect reporting of the Ocwen account continues to paint a false and damaging picture of Plaintiff. Experian and Equifax's consumer reports have yet to update the Ocwen account to accurately reflect the discharged status of the subject loan.

64. The entire experience has imposed upon Plaintiff significant distrust, frustration, distress, and has rendered Plaintiff hopeless as to his ability to regain his good name and the credit rating that he deserves and has worked hard to earn by completing his Chapter 13 plan.

65. The inaccurate reporting of the subject loan continues to have significant adverse effect on Plaintiff's credit rating and his ability to obtain financing as it creates a false impression that the Ocwen account is delinquent and owing, rendering Plaintiff a high risk consumer.

66. From February, 2014 through April, 2015, Plaintiff has applied and been denied credit as a result of the erroneous reporting of the Ocwen account. Specifically, Plaintiff has been denied financing on at least seven separate occasions as a result of the incorrect reporting of the Ocwen account. *See* Group Exhibit R, true and correct copies of letters denying the Plaintiff the extension of credit.

67. As a result of the conduct, actions, and inaction of Ocwen, Experian, and Equifax, Plaintiff has suffered various types of damages as set forth herein, including specifically, the loss of credit, the loss of ability to purchase and benefit from a credit line, certified mail expenses, and other frustration and aggravation associated with writing dispute letters, time and money expended meeting with his attorneys, tracking the status of his disputes, monitoring his credit file, and the mental and emotional pain and suffering, anguish, humiliation, and embarrassment of constant credit denials

68. As of August 1, 2015, the Ocwen account is reporting as "120+ days past due" with a "Scheduled Payment Amount" of $1,613. *See* Exhibit S, a true and correct copy of Plaintiff's August 1, 2015 Equifax credit report.

## COUNT I - VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (AGAINST OCWEN)

69. Plaintiff restates and realleges paragraphs 1 through 68 as though fully set forth herein.

70. Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(c) and (b).

71. Ocwen is a "person" as defined by 15 U.S.C. §1681a(b).

72. Ocwen is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

73. Ocwen violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving requests for an investigation and reinvestigation from Experian, Equifax, and Plaintiff.

74. Ocwen violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by Experian, Equifax, and Plaintiff.

75. Had Ocwen reviewed the information provided by Experian, Equifax, and Plaintiff, it would have corrected the inaccurate designation of the subject loan and transmitted the correct information to Experian and Equifax. Instead, Ocwen wrongfully and erroneously confirmed its inaccurate reporting without conducting a reasonable investigation.

76. Ocwen violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the inaccurate information on Plaintiff's file.

77. Ocwen violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of any reasonable investigation or reinvestigation of Plaintiff's disputes with Experian and Equifax.

78. Ocwen violated 15 U.S.C. §1681s-2(b)(1)(C)-(D) by failing to report the results of its investigation or reinvestigation to Experian and Equifax after being put on notice and discovering inaccurate reporting with respect to the subject loan.

79. Ocwen failed to conduct a reasonable reinvestigation of its reporting of the subject loan, record that the information was disputed, or delete the inaccurate reporting from Plaintiff's credit file within 30 days of receiving notice of a dispute from Experian and Equifax under 15 U.S.C. §1681i(a)(1).

80. Ocwen violated 15 U.S.C. §1681s-2(b)(2) by failing to take the required action with respect to Plaintiff by the deadlines set forth in 15 U.S.C. §1681i(a)(1).

81. Despite the blatantly obvious errors on Plaintiff's credit file, and Plaintiff's efforts to correct the errors, Ocwen did not correct the errors or trade line to report accurately. Instead, Ocwen wrongfully furnished and re-furnished false and erroneous information that the subject loan was delinquent and owing.

82. A reasonable investigation by Ocwen would have confirmed the veracity of Plaintiff's dispute, yet the inaccurate information continues to be reported on Plaintiff's credit files.

83. Had Ocwen taken steps to investigate Plaintiff's valid disputes or Experian and Equifax's requests for investigation, it would have permanently corrected the erroneous credit reporting. Plaintiff provided all relevant information in his request for investigation. Furthermore, Plaintiff's bankruptcy information is public record that is widely available and easily accessible.

84. By deviating from the standards established by the mortgage servicing industry and the FCRA, Ocwen acted with reckless and wanton disregard for its duty as a furnisher to report accurate and complete consumer credit information to Experian and Equifax.

WHEREFORE, Plaintiff EDWARD JEFF PRICE requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. Order the deletion or modification of all adverse credit reporting relating to the subject loans;

c. Award Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations;

d. Award Plaintiff statutory damages of $1,000.00 for violations of the FCRA, pursuant to 15 U.S.C. §1681n;

e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

f. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

g. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT II - VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (AGAINST EXPERIAN)

85. Plaintiff restates and realleges paragraphs 1 through 68 as though fully set forth herein.

86. Experian is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

87. Experian is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

88. Plaintiff provided Experian with all relevant information and documentation in his requests for investigation to reflect the discharged status of the subject loan.

89. Experian prepared Plaintiff's credit reports containing inaccurate information by reporting the subject loan with a high balance, a scheduled payment amount, and past due amount when in fact he had received a bankruptcy discharge and owed no balance, was not in default, and was not obligated to make a monthly payment in relation to the subject loan.

90. A simple review of the documents submitted by Plaintiff would have confirmed that Plaintiff had received a discharge and no longer owed a balance, was not in default, and no longer had an obligation to make monthly payments to Ocwen.

91.   Had Experian taken *any* steps to investigate Plaintiff's valid dispute, it would have determined that the subject loan was discharged in bankruptcy.

92.   Instead, Experian sent Plaintiff a correspondence stating that it had updated its records to reflect Plaintiff's bankruptcy discharge, at the same time that it willfully continued to report the inaccurate information.

93.   Experian violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the erroneous information on Plaintiff's credit file.

94.   Experian violated 15 U.S.C. §1681i(a)(2) by failing to record all relevant information that it received from Ocwen and Plaintiff with regard to Plaintiff's credit report and the subject loan.

95.   Experian violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff and Ocwen with regard to the subject loan.

96.   Experian violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the incorrect information that was the subject of Plaintiff's dispute.

97.   Experian violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from Ocwen that the information was complete and accurate, and without sending notice of the re-reporting to Plaintiff. The lack of notice and correction caused Plaintiff to pull his credit multiple times, only to find that the inaccurate reporting remained. The multiple necessary inquiries had a continued negative impact on Plaintiff's credit worthiness and credit score.

98.   Since *all* of Plaintiff's other accounts were reported as "$0 balance owed," "included in bankruptcy," or "discharged," Experian should have investigated why the Ocwen trade line, and

15

only the Ocwen trade line, still reported as "due and owing," and "a scheduled payment amount."

99. Moreover, after Plaintiff's written disputes, Experian had specific information related to Plaintiff's bankruptcy case and discharge order, which included the subject loan.

100. Experian knew that the inaccurate designation of the subject loan on Plaintiff's credit report under the Ocwen trade line as delinquent, in default, and with a high balance owed after his bankruptcy discharge would have a significant adverse affect on Plaintiff's credit worthiness and ability to receive a "fresh start" after bankruptcy.

101. The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

102. By deviating from the standards established by the credit reporting industry and the FCRA, Experian acted with reckless disregard for its duties to report accurate and complete consumer credit information.

103. It is Experian's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

104. Experian's perpetual non-compliance with the requirements of the FCRA is indicative of the reckless, willful and wanton nature of its conduct in maintaining Plaintiff's credit file and reporting Plaintiff's credit information.

105. Experian acted reprehensively by perpetually reporting the Ocwen account as delinquent, in default, and owing a high past due balance.

106. As a result of the conduct, actions, and inaction of Experian, Plaintiff has suffered various types of damages as set forth herein, including specifically, the loss of credit, the loss of

16

ability to purchase and benefit from a credit line, certified mail expenses, and other frustration

and aggravation associated with writing dispute letters, time and money expended meeting with

his attorneys, tracking the status of his disputes, monitoring his credit file, and the mental and

emotional pain and suffering, anguish, humiliation, and embarrassment of constant credit

denials.

107.  Experian's conduct was willful, rendering it liable for punitive damages in an amount

to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

WHEREFORE, Plaintiff EDWARD JEFF PRICE requests that this Honorable Court:

a.  Declare that the practices complained of herein are unlawful and violate the
aforementioned statute;

b.  Order the deletion of all adverse credit reporting;

c.  Award Plaintiff actual damages, in an amount to be determined at trial, for the underlying
FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d.  Award Plaintiff statutory damages of $1,000.00 for the underlying FCRA violations,
pursuant to 15 U.S.C. §1681n;

e.  Award Plaintiff punitive damages, in an amount to be determined at trial, for the
underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

f.  Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. § 1681n
and 15 U.S.C. §1681o; and

g.  Award any other relief as this Honorable Court deems just and appropriate.

### COUNT III - VIOLATION OF THE FAIR CREDIT REPORTING ACT
#### (AGAINST EQUIFAX)

108.  Plaintiff restates and realleges paragraphs 1 through 68 as though fully set forth herein.

109.  Equifax is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

110.  Equifax is a "consumer reporting agency that compiles and maintains files on

consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

111.  Plaintiff provided Equifax with all relevant information and documentation in his request for investigation and reinvestigation to reflect that he obtained a discharge and is no longer liable for the subject loan.

112.  Equifax prepared Plaintiff's credit reports containing inaccurate information by reporting the subject loan with an amount past due, an owed balance, and a scheduled payment amount, when in fact he had received a bankruptcy discharge and owed no past due amounts, had no balance, and was not obligated to make monthly payments in relation to the subject loan.

113.  A simple review of the documents submitted by Plaintiff would have confirmed that Plaintiff had filed bankruptcy, no longer owed a balance, no longer had a scheduled payment amount, and was not in default on the subject loan.

114.  Equifax violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the erroneous information on Plaintiff's credit file.

115.  Had Equifax taken *any* steps to investigate Plaintiff's valid disputes, it would have determined that the subject loan was discharged in bankruptcy.

116.  Instead, Equifax sent Plaintiff correspondence stating that it had updated its records to reflect Plaintiff's bankruptcy discharge, at the same time that it willfully continued to report the inaccurate information.

117.  Equifax violated 15 U.S.C. §1681i(a)(2) by failing to record all relevant information that it received from Ocwen and Plaintiff with regard to Plaintiff's credit report and the subject debt.

118.  Equifax violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff and Ocwen with regard to the subject loan.

18

119.  Equifax violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the incorrect information that was the subject of Plaintiff's dispute.

120.  Equifax violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from Ocwen that the information was complete and accurate, and without sending notice of the re-reporting to Plaintiff. The lack of notice and correction caused Plaintiff to pull his credit multiple times, only to find that the inaccurate reporting remained. The multiple necessary inquiries had a continued negative impact on Plaintiff's credit worthiness and credit score.

121.  Since *all* of Plaintiff's other accounts were reporting as "$0 balance owed," "included in bankruptcy," or "discharged," Equifax should have investigated why the Ocwen trade line, and only the Ocwen trade line, still reported as "past due," "due and owing," and "a scheduled payment amount."

122.  Moreover, after Plaintiff's written disputes, Equifax had specific information related to Plaintiff's bankruptcy case and subsequent discharge as Plaintiff provided his Discharge Order along with his written dispute.

123.  Equifax knew that the inaccurate designation of the subject loan on Plaintiff's credit report under the Ocwen trade line as delinquent, in default, and with a high balance owed after his bankruptcy discharge would have a significant adverse affect on Plaintiff's credit worthiness and ability to receive a "fresh start" after bankruptcy.

124.  The FCRA requires that the credit reporting bureaus implement procedures and systems to promote accurate credit reporting.

125. By deviating from the standards established by the credit reporting industry and the FCRA, Equifax acted with reckless disregard for its duty to report accurate and complete consumer credit information.

126. It is Equifax's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

127. Equifax's perpetual non-compliance with the requirements of the FCRA is indicative of the reckless, willful and wanton nature of its conduct in maintaining Plaintiff's credit file and reporting Plaintiff's credit information.

128. Equifax acted reprehensively by reporting the Ocwen account as delinquent, in default, and owing a high past due balance on Plaintiff's credit report.

129. As a result of the conduct, actions, and inaction of Equifax, Plaintiff has suffered various types of damages as set forth herein, including specifically, the loss of credit, the loss of ability to purchase and benefit from a credit line, certified mail expenses, other frustration and aggravation associated with writing dispute letters, time and money expended meeting with his attorneys, tracking the status of his disputes, monitoring his credit file, and the mental and emotional pain and suffering, anguish, humiliation, and embarrassment of constant credit denials.

130. Equifax's conduct was willful, rendering each liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

WHEREFORE, Plaintiff EDWARD JEFF PRICE requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. Order the deletion of all adverse credit reporting;

c. Award Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d. Award Plaintiff statutory damages of $1,000.00 for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

f. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

g. Award any other relief as this Honorable Court deems just and appropriate.

## COUNT IV – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (AGAINST OCWEN)

131. Plaintiff restates and realleges paragraphs 1 through 68 as though fully set forth herein.

132. The Plaintiff is a "consumer" as defined by FDCPA §1692a(3).

133. The subject debt qualifies as a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction for personal, family, or household purposes.

134. Ocwen qualifies as a "debt collector" as defined by §1692a(6) because it regularly collects debts and uses the mail and/or the telephones to collect delinquent consumer accounts.

135. Ocwen qualifies as a "debt collector" because it acquired rights to the subject loan after it was in default. 15 U.S.C. §1692a(6).

136. Bankruptcy Code §524(a)(2)-(3) commonly known as the discharge injunction, prohibits "an act, to collect, recover or offset any such debt as a personal liability of the debtor," and "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor." 11 U.S.C. §§524(a)(2)-(3).

21

137.  Ocwen violated 15 U.S.C. §§1692 c(a)(2), d, d(5), e(2), e(10), and f(1) through its collection efforts on a debt discharged in bankruptcy.

### a.  Violation of  FDCPA §1692c

138.  Ocwen violated §1692 c(a)(2) by sending dunning letters directly to the Plaintiff when it knew that the Plaintiff was represented by counsel. The identity and contact information of the Plaintiff's counsel was expressly stated in the Notice of Chapter 13, which is a matter of public record, and was served upon Ocwen.

### b.  Violation of  FDCPA §1692d

139.  Ocwen engaged in abusive and oppressive conduct in violation of the FDCPA §1692d(5) by repeatedly calling Plaintiff on his cell phone to collect on the subject loan.

140.  Ocwen violated the FDCPA §1692d(5) by repeatedly causing Plaintiff's cellular phone to ring and trying to engage him in conversations regarding the collection of the subject loan.

141.  Ocwen violated FDCPA §§1692d and d(5) when it harassed, oppressed, and abused Plaintiff by relentlessly calling him and sending Plaintiff dunning letters seeking immediate payment on a discharged debt.

### c.  Violation of  FDCPA §1692e

142.  Ocwen violated §1692e(2) by falsely representing that the subject debt was owed at the time the dunning letters were sent when it was not by virtue of the bankruptcy discharge.

143.  Ocwen violated §1692e(8) by communicating false credit information in relation to the subject loan to Experian and Equifax. Specifically, Ocwen continued to falsely represent to Experian and Equifax that the subject loan was due and owing and in default.

144.  Ocwen violated §1692e(10) by falsely representing to Plaintiff that the subject loan was due and owing as the subject loan was not owed at the time the dunning letters were sent to Plaintiff and the collection calls were placed to Plaintiff.

### d.  Violation of  FDCPA §1692f

145.  Ocwen violated §1692f(1) by attempting to collect a debt not permitted by law as the Plaintiff's obligation on the subject loan was discharged via his bankruptcy filing and subsequent discharge.

146.  Ocwen attempted to dragoon and induce the Plaintiff into paying a debt that was not legally owed.

147.  As an experienced mortgage servicer, Ocwen knew or should have known the ramifications of collecting on a debt that was discharged in bankruptcy.

148.  Ocwen knew or should have known that the subject loan was uncollectable as a matter of law.

149.  Upon information and belief, Ocwen has no system in place to identify and cease collection of discharged debts.

WHEREFORE, Plaintiff EDWARD JEFF PRICE  requests that this Honorable Court:

a.  Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b.  Award the Plaintiff statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;

c.  Award the Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k; and

d.  Award any other relief as this Honorable Court deems just and appropriate.

## COUNT V – VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT
### (AGAINST OCWEN)

150. Plaintiff restates and realleges paragraphs 1 through 68 as though fully set forth herein.

151. The TCPA prohibits calling persons on their cellular phone using an automatic telephone dialing system ("ATDS"). 47 U.S.C. §227(b)(1)(iii). The TCPA defines ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

152. Ocwen employed a predictive dialing system to place calls to Plaintiff.

153. "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

154. The Federal Communications Commission ("FCC") has determined that predictive dialing systems are a form of an automatic telephone dialing system. *Id.*

155. Ocwen did not have consent to call Plaintiff's cellular phone.

156. Ocwen violated the TCPA by placing no less than 156 calls to Plaintiff's cellular phone using an ATDS without his consent. Any prior consent was revoked by virtue of Plaintiff's bankruptcy discharge.

157. Moreover, Plaintiff verbally revoked consent during phone calls with Ocwen.

158. As pled in paragraphs 43-44, Plaintiff was harmed by Ocwen's collection calls to his cellular phone.

24

159.  Pursuant to 47 U.S.C. §227(b)(3)(B), Ocwen is liable to Plaintiff for a minimum of $500 per call. Moreover, pursuant to 47 U.S.C. §227(b)(3)(C), Ocwen's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. §227(b)(3)(C).

WHEREFORE, Plaintiff EDWARD JEFF PRICE requests that this Honorable Court:

a.  Declare Ocwen's conduct to be a violation of the TCPA;

b.  Award Plaintiff damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C);

c.  Award Plaintiff reasonable attorney fees and costs; and

d.  Award any other relief this Honorable Court deems equitable and just.

## COUNT VI- VIOLATION OF THE DISCHARGE INJUNCTION
### (AGAINST OCWEN)

160.  Plaintiff restates and realleges paragraphs 1 through 68 as though fully set forth herein.

### a.  Section 11 U.S.C. §524(a)(2)

161.  Pursuant to 11 U.S.C. §524(a)(2), a discharge order "operates as an injunction" against acts to collect discharged debts.

162.  "Section 524(a)(2) enjoins an act to collect a discharged debt, so a creditor that attempts to collect a discharged debt is in contempt of the bankruptcy court that issued the order of discharge." *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 915 (7th Cir. 2001).

163.  Punitive damages may be awarded for violations of the bankruptcy discharge, and are especially appropriate when a party acts in "clear disregard and disrespect of the bankruptcy laws." *In re Vazquez*, 221 B.R. 222, 231 (Bankr.N.D.Ill.1998). Punitive damages of four to ten times the amount of compensatory damages may be appropriate for willful violations of the bankruptcy injunction. *Id.*

25

### b. Ocwen's conduct was perpetual, willful, and wanton

164. Ocwen had knowledge of the Order of Discharge and discharge injunction through multiple notices from the BNC, the public record, and directly from Plaintiff. *See* Exhibits A through D.

165. Ocwen violated the Order of Discharge by willfully attempting to collect on the subject loan with actual notice of Plaintiff's bankruptcy and the discharged status of the subject loan.

166. Ocwen violated the discharge injunction by sending dunning letters and placing phone calls to Plaintiff in an attempt to collect the discharged subject loan.

167. Moreover, Ocwen's failure to update its reporting of the subject loan represents an act to collect the subject debt through coercion.

168. Ocwen should have implemented procedures and trained its employees to both discourage and prevent willful and wanton violations of the Bankruptcy Code.

169. Ocwen's conduct demonstrates that it has no such system in place to protect the rights of innocent consumers under the protection of the Bankruptcy Code.

170. Based on the broad language of the Bankruptcy Code, Ocwen willfully and negligently sought to collect a debt from Plaintiff in violation of the discharge injunction, thus warranting sanctions and punitive damages to deter future conduct of a similar nature.

WHEREFORE, Plaintiff EDWARD JEFF PRICE requests that this Honorable Court:

a. Hold Ocwen in civil contempt of the Order or Discharge pursuant to 11 U.S.C. §§524 and 105;

b. Order Ocwen to pay Plaintiff for his actual damages in an amount to be determined by the court as a result of the civil contempt of the Order of Discharge pursuant to 11 U.S.C. §§524 and 105;

c.  Order Ocwen to pay punitive damages in an amount to be determined by the court for the civil contempt of the Order of Discharge pursuant to 11 U.S.C. §§524 and 105;

d.  Order Ocwen to pay Plaintiff his reasonable legal fees and expenses for violations of the Order of Discharge pursuant to 11 U.S.C.; §§524 and 105; and

e.  Provide such other and further relief as the Court may deem just and proper.

### COUNT VII – VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT
### (AGAINST OCWEN)

171.  Plaintiff restates and realleges paragraphs 1 through 68 as through fully set forth herein.

172.  Plaintiff is a  "person" and a "consumer" as defined in ICFA, 815 ILCS 505/ (c) and (e) respectively.

**a. Unfairness**

173.  Ocwen is engaged in commerce in the State of Illinois with regard to Plaintiff, the subject loan, and the subject property. Ocwen specializes in lending, servicing, and debt collection, which are activities within the stream of commerce and utilized in their regular course of business.

174.  Ocwen's demands for payment on the subject loan, which was duly scheduled in Plaintiff's bankruptcy and subsequently discharged, represents the use of false pretenses and misleading communication to attempt to collect a debt that was not owed at the time the demands for payment were made.

175.  It was unfair for Ocwen to seek to collect the subject loan from the Plaintiff through misleading dunning letters and continuous phone calls to Plaintiff's cellular phone.

176.  It was unfair for Ocwen to attempt to induce the Plaintiff into making payments on an uncollectible loan by repeatedly sending dunning letters and placing harassing collection calls to Plaintiff's cellular phone.

27

177. It was unfair for Ocwen to contact Plaintiff directly knowing that he was represented by an attorney.

178. It was unfair for Ocwen to continue contact with Plaintiff after Plaintiff demanded that all contact cease per the mandates of the discharge injunction.

179. Ocwen intended that Plaintiff rely on its unfair acts.

### b. Deception

180. Ocwen's demands for payment represent the use of deception, fraud, and false pretense in an attempt to collect a debt because it was not owed at the time the demands for payment were made.

181. Ocwen's demands were deceptive because they were systematically calculated to mislead Plaintiff into believing the subject debt was owed, when in fact the subject debt was discharged in Plaintiff's bankruptcy.

182. Ocwen's demands for payment were systematically calculated to induce payment on a debt that is no longer owed.

183. Such deceptive conduct is harmful to Illinois consumers as it can result in Illinois consumers paying debts that are not owed.

184. As pled above, Plaintiff has suffered damages as a result of Ocwen's deceptive collection practices.

185. An award of punitive damages is appropriate because Ocwen's conduct described above was outrageous, willful and wanton, showed a reckless disregard for the rights of Plaintiff and consumers.

WHEREFORE, Plaintiff EDWARD JEFF PRICE requests that this Honorable Court:

a.  Enter judgment in Plaintiff's favor and against Ocwen;

b.  Award Plaintiff his actual damages in an amount to be determined at trial;

c.  Award Plaintiff his punitive damages in an amount to be determined at trial;

d.  Award Plaintiff his reasonable attorney's fees and costs pursuant to 815 ILCS 505/10a(c);
    and

e.  Award any other relief this Honorable Court deems equitable and just.

**Plaintiff demands trial by jury.**

Dated: August 28, 2015                    Respectfully Submitted,

                                          /s/ Mohammed O. Badwan

                                          Mohammed O. Badwan, Esq. ARDC#6299011
                                          *Counsel for Plaintiff*
                                          Sulaiman Law Group, LTD
                                          900 Jorie Blvd, Ste 150
                                          Oak Brook, IL 60523
                                          Phone (630)575-8181
                                          Fax: (630)575-8188